**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JORGE SANTIAGO MARRERO, MARIBEL CAPESTANY GOMEZ AND THEIR CONJUGAL LEGAL PARNTERSHIP**<br>**Plaintiffs**<br><br>**VS.**<br><br>**JOEL PIZÁ BATIZ (In his Personal and Official Capacities), FULANA DE TAL, AND THEIR CONJUGAL LEGAL PARTNERSHIP SLGA, JOSE RIOLLANO (In his Personal and Official Capacities), JUANA DEL PUEBLO AND THEIR CONJUGAL LEGAL PARTNERSHIP SLGB, SUSANA FIGUEROA (In her Personal and Official Capacities), THE PUERTO RICO PORTS AUTHORITY, CHRISTIAN TRINIDAD (In his Personal and Official Capacities) DAMARIS RIVERA VALLE (In her Personal and Official Capacities), EILEEN VÉLEZ VEGA (In her Personal and Official Capacities), JOHN DOE AND THEIR CONJUGAL LEGAL PARTNERSHIP SLGC, INSURANCE COMPANIES X, Y, AND Z; JOHN DOES 1,2, AND 3; JOAN DOES 1,2 AND 3**<br>**Defendants** | **CIVIL NUM.**<br><br>**RE:   Civil Rights Violation, Political Discrimination, Due Process, Torts Claim Action**<br><br>Plaintiffs demand trial by jury |

# COMPLAINT

**TO THE HONORABLE COURT**: Comes now the Plaintiffs in the case of caption, by and through the undersigned attorney and very respectfully ALLEGE, STATE AND PRAY:

## I. INTRODUCTION:

1.  This is a civil rights action brought under 42 U.S.C. sections **1983 and 1988** for deprivation of rights to freedom of belief, speech, and freedom of association, under the **First and Fourteenth Amendments** to the United States Constitution, for violations of U.S. Constitutional rights of Due Process, and for Attorney's fees,

as well as rights guaranteed by the Constitution and the Laws of Puerto Rico pursuant to **Articles 1536, 1537, and  1540 (d)** of the Civil Code of Puerto Rico and, **Law 100** 29 LPRA sec. 146.  The plaintiffs seek declaratory and injunctive relief; reimbursement, re-installment, emotional, economic and punitive damages; pre- and post-judgment interests, and any other relief which this Court deems just and proper.

## II.  JURISDICTION AND VENUE

2. The court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C.  Sections 1331 and 1343 (3) due to the fact that this action arises under the United States Constitution, and Laws of the United States.   Subject Matter Supplemental Jurisdiction over claims asserted under the Laws of Puerto Rico is based upon supplemental jurisdiction pursuant to 28 U.S.C.  Section 1367.  The federal claims have sufficient substance to confer subject matter jurisdiction to this Court and the State Law claims arise out of the same nucleus of operative facts as the Federal Claims arise.   The venue is proper pursuant to 28 USC Section 1391 (b) as Puerto Rico is the Judicial District where all the relevant facts occurred and where all parties reside.

## III.  JURY TRIAL DEMANDED

3. All Plaintiffs demand trial by jury in all causes of action so triable.

## IV.  PARTIES

### A Plaintiffs

4.  The plaintiffs in the present action are all natural persons, citizens of the United States of America, residents of the Commonwealth of Puerto Rico.

5.  Plaintiff Jorge Santiago Marrero (hereinafter Plaintiff Santiago) was employed by the Puerto Rico Port Authority (hereinafter Ports Authority).  He was named as At Large Regional Airport Manager under a contract from September 4, 2001, up until April 14, 2003.  His labors in his work were so excellent that he was given the career position of At Large Regional Airport Manager up until December 2014, when he was named Assistant Director of Airport Management until he was illegally, unjustly and discriminatorily fired in 2022. At the moment he was fired he was earning five thousand five hundred dollars ($5,500.00) monthly.

6.  Plaintiff Maribel Capestany Gomez (Hereinafter Plaintiff Capestany) is legally married to Plaintiff Santiago.  Defendants attempts to constructively fire, to harass and to discriminate against Plaintiff Capestany's beloved husband, and the constant re-assignments to different municipalities across the island, and false charges and firing of Plaintiff Santiago have caused her severe emotional damages, and extreme stress and worry about the economic future of their family, and humiliation.  Furthermore, the discrimination, harassment and humiliation which he suffered at the hands of all Defendants caused her deep emotional harm, which she continues to suffer and will continue to suffer.

7.  The Conjugal Partnership created by the matrimony of Plaintiffs Santiago and Capestany is economically dependent on the salary of Plaintiff Santiago and has suffered severely by his illegal and discriminatory demotion and constructive firing.

B. Defendants

8.  Defendant Joel Piza Batiz (hereinafter Piza) is a natural person as that term is used in the text of the Statute and is and active member of the New Progressive Party (NPP) and at the time of the facts, Defendant Piza was named as Chief Executive Officer (hereinafter CEO) of the Puerto Rico Ports Authority in December of 2019.  Before that he was general counsel and subsecretary, and prior to that he was an Executive Assistant. He is being sued in both his official and personal capacities.  He is a very active member of the NPP and was given the CEO of the Ports Authority, he had knowledge of Plaintiff Santiago's political affiliation, and had the responsibility to protect Plaintiff Santiago from the illegal discriminatory misconduct of all defendants.  At all relevant times, defendant was acting under color of law and pursuant to his authority conceded by his position of CEO of the Ports Authority.    Defendant Piza is the ultimate authority at the Ports Authority and has the authority to hire, fire, and make decisions.

9.  Defendant Fulana de Tal is the fictional name of a natural person, whose name at the moment is unknown, as that term is used in the text of the Statute and was at the time of the facts, and at the time of the facts as currently is the legal spouse of co- defendant Piza and arising from their marital union is liable.  Fulana de Tal benefited from the salary of Piza during his employment as CEO of the Ports Authority.

10.  Defendant SLGA is the conjugal legal partnership composed of Joel and Fulana de Tal and benefited from the Salary of Piza during his employment as CEO of the Ports Authority.

3

11.   Defendant Jose Riollano (hereinafter Riollano) is a natural person as that term is used in the text of the Statute and is and active member of the NPP and at the time of the facts, held Position as Director of Airport Management of the Ports Authority, a position which he still holds.  Riollano supervised Plaintiff Santiago at the time of the facts, and he is being sued in both his official and personal capacities.  He is a very active member of the NPP and was given the Position of Director of Airport Management of the Ports Authority of the Puerto Rico Ports Authority, though he was less qualified and less experienced as Plaintiff Santiago.  At all relevant times, defendant Riollano was acting under color of law and pursuant to his authority conceded by his positions of General Manager of the LMM and All Regional Airports of the Ports Authority. He is being sued in his personal and official capacities, and had knowledge of Plaintiff Santiago's political affiliation, and even sued him for political discrimination.

12.   Defendant Juana del Pueblo is the fictional name of a natural person, whose name at the moment is unknown, as that term is used in the text of the Statute and was at the time of the facts and is currently the legal spouse of co- defendant Riollano and arising from their marital union is liable.  Juana del Pueblo has benefited and does benefit from the salary of Defendant Riollano at all times during his employment as Director of Airport Management of the Ports Authority.

13.   Defendant SLGB is the conjugal legal partnership composed of Jose Riollano and Juana del Pueblo and benefited from the Salary of Riollano, during the time when he held the position of Director of Airport Management of the Ports Authority.

14.   Defendant Susana Figueroa Liggett (hereinafter Figueroa) is a natural person as that term is used in the text of the Statute and at the time of the facts, who held Position as Equal Opportunity Officer at the time of the facts and is being sued in both her official and personal capacities.  She is a very close with the administration NPP, a factor considered being appointed and maintained to the Position of Equal Opportunity Officer at Puerto Rico Ports Authority.  At all relevant times, defendant Figueroa was acting under color of law and pursuant to her authority conceded by her position of Equal Opportunity Officer and is being sued in her personal and official capacities.  Defendant Figueroa had knowledge of Plaintiff's political affiliation.

15.   Defendant Eileen Vélez Vega (hereinafter Velez) is currently the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico, appointed as such by Puerto

Rico Governor Pedro Pierluisi in December of 2020, as she is a militant member of the NPP.   At all relevant times, defendant Figueroa was acting under color of law and pursuant to her authority conceded by her position as Secretary of Transportation and Public Works.  She is the Ultimate Authority at the Department of Transportation and Public Works, she holds a policy and decision-making position, and has the authority to fire and hire.   She is being sued in both her personal and official capacities.

16. Defendant John Doe is the fictional name of a natural person, whose name at the moment is unknown, as that term is used in the text of the Statute and was at the time of the facts and is currently the legal spouse of co- defendant Eileen Vélez and arising from their marital union is liable.  Defendant John Doe has benefited and does always benefit from the salary of Defendant Velez during her employment as Secretary of Transportation and Public Works.

17. Defendant SLGC is the conjugal legal partnership composed of Defendant Velez and Defendant John Doe and benefited from the Salary of Defendant Velez during the time when she held the position of Secretary of Transportation and Public Works.

18. Puerto Rico law established the Puerto Rico Transportation Authority as a public corporation as established by Puerto Rico Law in 1942. See P.R. Laws Ann. tit. 23 § 331. In 1955, Puerto Rico renamed the entity the Puerto Rico Ports Authority. Id. § 332(a). The special purposes that PRPA is charged with performing are "to develop and improve, own, operate, and manage any and all types of air and marine transportation facilities and services, as well as to establish and manage mass marine transportation systems in, to and from the Commonwealth of Puerto Rico on its own, or in coordination with other government, corporate or municipal entities." Id. § 336.  Defendant Puerto Rico Transportation Authority (hereinafter PRTA) Puerto Rico Law No. 125 of May 7.   Pursuant to Grajales v. Puerto Rico Ports Authority No. 15-1278 (First Cir. July 26, 2016), for lawsuits of the same nature as the present, the PRTA is not considered to be an arm of the state.

19.    Defendant Christian Trinidad (hereinafter Trinidad) is the sub-director of the Ports Authority.  He was named to the position as he is a NPP Militant, he had the obligation to protect plaintiff from discriminatory, arbitrary, and illegal acts of Ports Authority employees.   He is a designate of co-defendant Piza, and has the

authority to fire, hire, and make decisions.  He, just as all other co-defendants, was aware of Plaintiff's Political Affiliation.  At all relevant times he was acting under color of law and pursuant his authority conceded to him by his position of Sub Director of the Ports Authority.  He is being sued in his personal and official capacities.

20.    Defendant Damaris Rivera Valle, (hereinafter Defendant Rivera) at all relevant times, and currently, is the Human Resources Director for the Ports Authority, she was appointed to such position, as she is a militant NPP supporter.  She had the obligation to protect plaintiff from discriminatory, arbitrary, and illegal acts of Ports Authority employees.  At all relevant times she was acting under color of law and pursuant to her authority conceded by her position of Human Resources Director. She is being sued in both her personal and official capacities.

21.   Juan del Pueblo the fictional name of a natural person, whose name at the moment is unknown, as that term is used in the text of the Statute and at the time of the facts was and is currently the legal spouse of co-defendant Rivera and arising from their marital union is liable.  Juan del Pueblo benefited from the salary of Rivera since she was named the   Human Resources Director of the Ports Authority and currently benefits from said salary.

22.   Defendant SLGD is the conjugal legal partnership composed of Defendant Rivera and Juan del Pueblo,  and benefits from the salary of Rivera and benefited from her salary at the time of the facts.

23.   Insurance companies XYZ are the Insurance companies which carry the policies of the Puerto Rico Ports Authority, and which offer coverage for actions of the present nature.

24.   John Does 1, 2, and 3 and Joan Does 1, 2, and 3 are the fictitious names of  natural persons,  as that term is used in the text of the Statute, whose names are yet unknown, and  who acted in common concert with any and or all defendants to cause  or contribute to the violations to the laws contained in the law suit and who have caused injury to Plaintiffs, they are natural people as that term is used in the text of the Statute, and contributed to the Constitutional Violations, illegal transfers, illegal demotions,  harassment, discrimination violations of due process, firing, emotional damages and economical damages of all Plaintiffs and are thus responsible to Plaintiffs for said damages.

## V. FACTUAL ALLEGATIONS

22. On November 7, 2020, general elections were held in Puerto Rico. Prior to the November 2020 elections, the majority of the positions for Secretary and Director for the Agencies and Public Corporations of the Government of Puerto Rico were composed of people already associated with the New Progressive Party (NPP) named by prior Governor Wanda Vazquez. The gubernatorial candidate for the 2020 gubernatorial elections for the New Progressive Party was Pedro Pierluisi. Pedro Pierluisi (hereinafter Governor Pierluisi) defeated PDP Candidate Carlos Delgado.

23. Accordingly, on January 2, 2020, Pedro Pierluisi took office as the Governor of Puerto Rico.

24. In January 2023, Governor Pierluisi, although not removing all directors, changed the composition of the positions of Executive Director, Secretary and Director and Administrator for the various agencies and Public Corporations of the Puerto Rico Government, and as of today the majority of those positions are held by active members of the NPP, who in turn have appointed other NPP members in trust positions and have through those appointments given promotions to members of the NPP.

25. Governor Pierluisi named active NPP member Elieen Velez as the Secretary of the PRTA.

26. Plaintiff Santiago was an employee of the Ports Authority and was strongly affiliated with the PDP. He had been working for the Ports Authority for years before the Defendants took office and attempted to constructively fire, transfer, demote, harass and discriminate against, and ultimately fire him because of his political affiliation to a political party other than the NPP.

27. Plaintiff Santiago did not formulate public policy and his work and dedication to the Ports Authority lasted for a period of more than twenty (20) years before he was illegally fired. Plaintiff Santiago was an excellent employee whom other employees looked up to, and insured that regulations were abided by all employees.

28. From September 4, 2001, until April 14, 2003, Plaintiff Santiago was a temporary career employee holding the position of At Large Regional Airport Manager with the Ports Authority. During that time, he was under a contract until his excellent labors were rewarded and he was given the position of At Large Manager of Regional Airports a position he held up until 2014.

29. In 2001, immediately after starting employment with the Ports Authority, Plaintiff Santiago, among various other Ports Authority Employees, was sued by Defendant Riollano for Political Discrimination.

30.   Plaintiff, throughout his employment with the Ports Authority was mercilessly harassed by Defendant Riollano, and Security Officials associated with the NPP Irma Degró and Carlos Fuentes, who ran for the House of Representatives of PR for District 27 under the PNP Insignia in the year 2004.  Plaintiff, as part of his functions, had to file a complaint against Fuentes for improper use of material/equipment of the internal security office of the Mercedita Airport, after receiving complaints of excessive calls, as 1,772 calls were made from the telephone in the Security Office during the period of candidates looking for campaign endorsements. Only Fuentes and Degró had access to the key for the Security Office.

31.   After filing the complaint against Carlos Fuentes (hereinafter Fuentes), Fuentes hit Plaintiff on the arm and screamed, "Relax and quit screwing with me", and then proceeded to allege that it was Santiago who had hit him. In 2002, Plaintiff Santiago also had to file a complaint against Ms. Irma Degró (hereinafter Degró) as she enjoyed various flights on Cape Air Airlines without paying for them.  Degró then filed an internal sex discrimination complaint against Plaintiff falsely alleging that drugs and illegal arms were confiscated from Plaintiffs car, that he was convicted of Domestic Violence, that he interceded for the appointment of some employees in Ponce, that he made her sister drink aircraft gas, that he had problems with Border Patrol for money laundering. Due to the harmful nature of the allegations, Plaintiff Santiago was then forced to sue her, and in open court Degró admitted to having been lying about all of her allegations against Plaintiff Santiago.

33.   As a result of Degró's admitted lies, Plaintiff was transferred from the Ponce Airport to the Mayaguez Office, and once he prevailed in the falsely alleged sexual discrimination case, he requested that disciplinary actions against Degró be taken and that he returns to the Ponce Airport.  Both requests were ignored.

30.   Plaintiff Santiago was again transferred in 2009, after Luis Fortuno was elected Governor, and was transferred to Aguadilla, where he had found acts of corruption which he reported.  As punishment for informing, Plaintiff was transferred by the Director of the Agency who was at that time Bernardo Vazquez and sent to the Luis Munoz Marin International Airport in San Juan.

31.   Though Plaintiff Santiago had been Airport Manager, when he applied for the position of Manager for Ponce and Aguadilla, the position was given to Defendant Riollano who was by far less experienced, only having experience as an operation supervisor; however, Riollano was a known NPP supporter, and Plaintiff Santiago was a known PPD supporter.

32.  Plaintiff Santiago was informed of the illegal transfer from his supervisor Arnold Deleo (hereinafter Deleo) who omitted telling him that he could contest that decision. Arnold Deleo, Plaintiff's immediate supervisor at that time, temporarily held the position of Executive Director, and continued his discriminatory and illegal treatment of Plaintiff Santiago.

33.  As a Regional Airport Manager, one of Plaintiff Santiago's functions is to substitute for other managers who were on leave.  Immediately after receiving his promotion, Defendant Riollano went on vacation leave, and Deleo refused to allow Plaintiff Santiago to substitute, opting to let an assistant with absolutely no Management experience or knowledge, but who is affiliated with the NPP, substitute Riollano during his vacation.

34.  Plaintiff was then assigned to the Arecibo and Mayaguez airports, yet he was made to punch in for work at the Ponce Mercedita Airport.  He was the only employee made to punch in at a specific location, all other employees were able to punch in at any location.

35.  On June 16, 2010, the Executive Director position was filled by Escudero and in turn he appointed Bernardo Vazquez, a fanatical NPP activist, to the position of Executive Sub-Director for the Ports Authority.

36.  Bernardo Vazquez then requested NPP affiliated employees at the Aguadilla Airport to organize employees and ask them what their complaints against Plaintiff Santiago were, thus persecuting Plaintiff Santiago with the intention of having him fired.   Because Bernardo Vazquez could not get enough valid complaints against Plaintiff Santiago, Plaintiff Santiago was once again illegally transferred without sufficient notice by email.  Said notice did not notify Plaintiff of his right to contest the transfer.  Said letter claimed that necessity of service was the reason for the transfer.

37.  Plaintiff was then again transferred to the Luis Muñoz Marin Airport where his prior Supervisor Arnold Deleo was working, and Deleo told him that he would realize the functions of an assistant and not a manager, then he put Plaintiff in a storage room instead of an office, and finally did not give any tasks to Plaintiff at all.

38.  At the moment of the transfer, four (4) airports had no managers in property, and once plaintiff was transferred those positions were given to Riollano, and an assistant who had no management experience, yet who

was affiliated with the NPP.    In contrast to Plaintiff, the other two managers began to receive mileage and diets

funds as a benefit; however, Plaintiff was refused those benefits.

39.  On October 4, 2011, Bernardo Vazquez became the new Executive Director for the Ports Authority

and continued the campaign of discrimination against Plaintiff Santiago.

40.  Plaintiff was once again transferred, this transfer was to the Arecibo Airport, and when he once

again requested funds for mileage and per diem, and again was refused.

41.  Plaintiff had to punch in for work at the Ponce Mercedita Airport, and then travel to the Arecibo

Airport.  One day, upon arriving to Arecibo, Plaintiff Santiago was called into to his Office and asked about an

alleged altercation between plaintiff and another employee in Ponce when he was punching in.  Plaintiff

informed that he always punched in so early that no other employee was ever on the Airport grounds.  Plaintiff

later learned that Defendant Riollano had fabricated the altercation in an attempt to ensure Plaintiff would not

enter the Ponce Mercedita Airport again.

42.  After several months at Arecibo, Plaintiff received three (3) workplace harassment complaints from

prior employees that he supervised in Aguadilla, and immediately received a call from Angel Santiago St. James

Security Officer, who requested a meeting in the town of Coamo.

43.  Upon arriving to the meeting, Angel Santiago immediately informed Plaintiff Santiago to be careful,

that Defendant Susana Figueroa, the Port Authority Anti-Discrimination Official, had cited him to the Sheraton

Convention center, and asked him to help her get rid of him, she asked Angel Santiago to fabricate cases against

Plaintiff, and Mr. Angel Santiago refused to be a part of said misconduct.  Angel Santiago informed Plaintiff

Santiago that Defendants Figueroa and Riollano had met and decided that an employee would file a sexual

harassment claim against Plaintiff Santiago, as the three other three workplace harassment claims, along with the

one they planned to fabricate would ensure that Plaintiff Santiago would be fired.  Plaintiff sent said persons

cease and desist letters.

44.  Defendant Figueroa acted under color of her position's authority to have Plaintiff Santiago fired.

The position she holds includes investigative functions, and decision making.  In order to retaliate against, and to

punish Plaintiff for his Political Affiliation, she abused the authority of her position, and attempted to orchestrate

a firing using her specialized knowledge and position, rather than protecting him from discrimination and ensuring equal rights.

45.  In 2016, Defendant Riollano was appointed to the position of Director of Airport Management after the NPP Party won the elections, in said position, he was Plaintiff Santiago's direct supervisor.

46.  Once appointed, Defendant Riollano took all of Plaintiff's functions away, would publicly belittle and humiliate him, without reason, and refused to let him exercise his function of visiting all the airports, he also restricted his access to the time clock, only permitting him to punch in at the Central Building of the Ports Authority; whereas, NPP affiliated employees could use any time clock to punch in. Riollano reassigned Plaintiff's functions to William Febles, special assistant who demanded to be reclassified because of the reassignment. Defendant Riollano assigned Febles the most important airports and assigned Plaintiff the least busy airports.  Riollano refused to permit Plaintiff Santiago to participate in Annual Federal Inspections of certified airports and would not give him access to the timesheets of employees who under Plaintiff Santiago's command. Defendant Riollano also put inexperienced workers to cover for vacationing managers, refusing Plaintiff Santiago's request that he cover, as a function of his position.

47.  With malicious intent, and desire to harass, Defendant Riollano and William Febles requested that the Billing Office bill Plaintiff $2,833.00 for parking his personal airplane in the Ponce Airport, though Plaintiff did not owe money for parking his plane.  This in turn made it appear that Plaintiff was a debtor with the Ports Authority.

48.  Defendant Riollano acted under color of the authority of his position to discriminate against and to harass Plaintiff.  He used his decision-making power to treat plaintiff differently than employees who were not PDP activists, by taking away his functions, assigning him to less prestigious airports.  He acted under color of authority of his position to actively harass and promote harassment and false claims against Plaintiff in order to retaliate against, and punish Plaintiff, because Plaintiff held opposing political views to those he held.

49.  Among the airports that Plaintiff Santiago was assigned were the Fernando Luis Rivas Dominicci Airport in Isla Grande, which being very near Plaintiff's Office was one of the airports that Plaintiff would visit. His frequent visits and proximity caused the employees discomfort, as they were unused to being supervised. Plaintiff Santiago found many discrepancies and instructed the employees as to what needed to be done to

correct the matters. This caused further discord, and Rosa Tapia, Secretary of the Airport met with other employees to get rid of Plaintiff Santiago, and filed a sexual harassment complaint against him. The complaint was referred to Defendant Susana Figueroa who had promoted filing false claims against Plaintiff and who received a cease and desist letter due to such promotion of harassment and discrimination.

50. Plaintiff personally requested Defendant Joel Piza CEO of the Ports Authority as well as Subdirector Christian Trinidad to take Susana Figueroa off the investigation and produced to them the Sworn Statement of Angel Santiago which exposed the misconduct of Susana Figueroa, and Riollano. His requests, both personal and via legal counsel, were ignored. Defendants Joel Piza and Christian Trinidad, both holding policy making positions, had the obligation to protect Plaintiff against discrimination, harassment, and biased investigations, yet through ignoring Plaintiff's requests to have a different person investigate the complaint, they refused to give him a constitutionally adequate process amounting to condonation or tacit authorization of the illegal acts and discrimination and campaign of harassment, in order to retaliate and to punish Plaintiff for his political affiliation.

51. The investigation was not just nor was it impartial and the investigation was plagued with lies and manipulation, and Defendant Figueroa even expressed in front of several witnesses that she could not stand Plaintiff Santiago.

52. During the investigation Plaintiff Santiago was sited to Defendant Figueroa's office and informed her that he would answer all questions and assist in the investigation, if a non-biased person was put in charge of the investigation, she refused to permit anyone else from the office to perform the investigation.

53. After more than one year had passed, Defendant Cristian Trinidad signed the dismissal Plaintiff Santiago, and gave it to him on December 27, 2022.

54. Defendants Piza, Riollano, Figueroa, Trinidad, and Damaris Rivera Valle, had knowledge of Plaintiff's political affiliation because Riollano had identified him as belonging to an opposing political party. Said defendants all held positions that required them to protect Plaintiff against discrimination, harassment, and false claims. The aforementioned defendants all held positions of authority and decision and policy making, whereas plaintiff did not. Said Defendants actively harassed and plotted to have Plaintiff fired or condoned such misconduct. The illegal discrimination, harassment, their condonation occurred because Plaintiff belonged to a

different political party than Defendants did.  The harassment, false claims, and discrimination culminated in the termination of Plaintiff's Employment, over which he held proprietary rights.

## VI.  FIRST CLAIM FOR RELIEF
### Under 42 U.S.C. SECTION 1983 (First Amendment Political Discrimination, Violation of Freedom of Speech and Association)

55.  Plaintiffs allege and incorporate by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

56.  All defendants named in this complaint are employees of the Department of Transportation and Public Works (hereinafter DTOP) in policy and or decision making positions and all are militant members of the NPP party, and acting under color of authority of their positions, actively participated in concert among themselves in a chain of events which culminated with the arbitrary, illegal transfers, treatment, harassment and arbitrary constructive dismissal, false charges, biased hearing and dismissal  of Plaintiff Santiago due to the fact that his political affiliation which was different than theirs; although  Plaintiff Santiago performed his job at a level that met everyone's expectations,  the quality of Santiago's work is the reason that he worked for The Ports Authority for over twenty (20) years.

57.  Plaintiff Santiago was a Public Corporation career employee of the Ports Authority who could not be harassed, demoted, constructively discharged, arbitrarily transferred, or discriminated against, or fired due to his political affiliation or due to is exercising of his Constitutional right to freedom of expression and freedom of association under the First Amendment of the United States Constitution.

58.  Plaintiff Santiago, at all relevant times, was an employee of the Ports Authority.  He began working on September 4, 2001, as Regional Airport Manager "At Large" and then was given the position of Itinerant Regional Airport Manager located in Ponce.  He worked at the Ponce Airport up until August 2006, when he was transferred to the Mayaguez Airport where he worked up until May 2009, when he was informed verbally of the Port Authority's intention to transfer him to the Aguadilla Airport, and he was transferred in June 2009. Again, on May 4, 2011, he received a letter stating the Port Authority's intention to transfer him to the Luis Munoz Marin International Airport in San Juan and was transferred 5 days later.  Once again, effective September 1, 2011, Plaintiff Santiago was transferred to the Arecibo and Mayaguez Airports.  In a period of

three years, he was arbitrarily transferred three (3) times, without reason, immediately, and was never given the notification of his right to request reconsideration or to appeal the decision.

59. Due to his position, Plaintiff Santiago had many responsibilities, including insuring that problems and discrepancies were identified, and managed, and many of Plaintiff's co-workers resented those aspects of his position.

60. Defendant Riollano blatantly discriminated against Plaintiff because he belonged to a different political party than Defendant. Riollano under color of the authority of his position and discriminated against Plaintiff Santiago due to their differing political views as a form of retaliation and punishment for having political beliefs different to Riollano's.

61. Defendant Riollano under color of authority of his position actively harassed and promoted the harassment of plaintiff. He took away his functions and re-assigned them to a lesser qualified employee associated with the NPP. He prohibited Plaintiff Santiago from participating in annual federal inspections, would not give him access to time sheets of those who Plaintiff Santiago supervised, re-assigned important airports to lesser qualified employees associated with the NPP, ordered the Billing Division to fabricate debts with the Port Authority, prohibited Plaintiff from covering other managers, would get plaintiff transferred, and together with Defendant Figueroa actively plotted to file false charges against Plaintiff.

62. Defendants Riollano and Figueroa worked together to have employees file complaints against Plaintiff and went so far as to suggest that one employee fabricate charges so that Plaintiff Santiago would be fired.

63. Defendant Figueroa, discriminated and harassed Plaintiff Santiago. Under color of the authority of her position, she and defendant Riollano plotted to have Plaintiff Santiago fired as retaliation and punishment because he belonged to a different political party than NPP. Due to the nature of her position, she had the duty to protect Plaintiff Santiago from harassment, discrimination, and false claims, yet she actually promoted them, and refused to recuse herself from the investigation into workplace harassment so that she could ensure that he was fired, abusing her authority and contributing to the harassment, discrimination and termination of Plaintiff Santiago's employment.

64.    Defendant Rivera Valle, an NPP activist and Human Resources Director of the Ports Authority condoned the misconduct of Riollano, Figueroa, Rosa Tapia, and other employees resentful of Plaintiff Santiago's management. She had knowledge of the fabrication of charges, harassment, and discrimination of Plaintiff, and rather than comply with her duty to stop said misconduct, she ignored it, contributing to the illegal destitution of Plaintiff Santiago, because he did not belong to the same political party that she belonged to.

65.    Defendant Joel Piza, a NPP militant, was the ultimate authority at the Port Authority, with the authority to fire, hire and transfer employees, he holds a policy making position, and has the duty to protect his employees from harassment and discrimination, he has the duty to quell employee misconduct.  He had personal knowledge of the situation and Plaintiff Santiago personally requested that he remove Defendant Figueroa from the investigation of workplace harassment and explained why and showed him the sworn statement regarding Riollano and Figueroa's attempt to fabricate charges against him.  However, Defendant Piza condoned and authorized said acts by ignoring Plaintiff's request, as punishment and in retaliation for Plaintiff's political views, which were different from his own, and in order to fill his position with another NPP militant.

66.    Christian Trinidad, an NPP militant, was Defendant Piza's designate and conferred through designation the ultimate authority at the Port Authority, with the authority to fire, hire and transfer employees, he holds a policy making position, and has the duty to protect his employees from harassment and discrimination, he has the duty to quell employee misconduct.  He had personal knowledge of the situation and Plaintiff Santiago personally requested that he remove Defendant Figueroa from the investigation of workplace harassment and explained why and showed him the sworn statement regarding Riollano and Figueroa's attempt to fabricate charges against him.  However, Defendant Trinidad condoned and authorized said acts by ignoring Plaintiff's request, as punishment and in retaliation for Plaintiff's political views, which were different from his own.

67.    The conduct and acts so color of authority of all defendants in illegally harassing, transferring, and constructively firing, demoting, humiliating, discriminating against, and firing Plaintiff  Santiago due to his political affiliation (which was different than theirs), and his exercising his Freedom of Speech and Association is a violation of Plaintiff's rights  under the First Amendment of the United States Constitution.

68.  All Defendants' acts of political discrimination against Plaintiff Santiago constitute state action within the meaning of the First and Amendment of the United States Constitution.  All Defendants have; therefore, violated the rights of association, expression and political advocacy secured to Plaintiff Santiago by the First Amendment to the Constitution of the United States

69.  Plaintiff Santiago was and is a known activist of the Popular Democratic Party.  All employees in the Ponce, Aguadilla, Mayaguez, Arecibo, and San Juan Airports and the Central Office in which he worked, including his supervisor, had clear knowledge that Plaintiff Santiago was an activist of the Popular Democratic Party.  Plaintiff Santiago was very active in the party outside of work, and participated in political activities, particularly in but without limitation to caravans, marches, meetings, and parades. His affiliation with the PDP was well known, and his affiliation with and vigorous support of the previous administration was also well known by all.  Defendant Riollano, an NPP activist also sued Plaintiff for alleged political discrimination in 2002, so well known was Plaintiff Santiago's affiliation with the Popular Democratic Party.

70.  Plaintiff Santiago was always an excellent and qualified employee and a highly effective manager, which is the reason he was given the position of Itinerant Regional Manager.  He was qualified and competent to perform the duties and functions of his position as Itinerant Manager of Regional Airports and although he was only given one (1) work evaluation it was excellent and performed his duties and functions satisfactorily. Furthermore from September 4, 2001 up until August 1, 2008, Plaintiff had eight (8) pay increases.

71.  In May 2009, Plaintiff Santiago was assigned to the Aguadilla Airport when he was yet again arbitrarily transferred to the LMM Airport in San Juan.  Plaintiff was contacted by email by the Personnel Director, Betsabeth Gullani Silvestri, on May 4, 2011.  In said email communication the Personnel Director sent an attachment that was a letter dated April 29, 2011, stating that according to orders of the Executive Director, Plaintiff had to report on May 9, 2011, to the LMM in San Juan, for alleged necessity of Service.

72.  Plaintiff Santiago was such of an asset to the Aguadilla Airport that the Control Tower Manager and the JetBlue Manager attempted to stop the transfer because they understood it would be prejudicial to the airport not to have him there.  Said people met with the Mayor of Aguadilla, but their requests were ignored.

73.  Another employee by the name of Edwin Sanchez informed Plaintiff in the presence of Mr. Jorge Gonzalez Barreto, Assistant of Managerial Matters, that the Subdirector asked both Victor Ortiz and him to be

16

present and to organize the employees, as they were "PNPs" (members of the NPP).    The purpose of these meetings was to see if enough complaints or severe complaints against Plaintiff Santiago were made, so that a firing would be justified.

74.    Due to the confidence that NPP directors and managers had amongst themselves, there was no hesitation for them to order Plaintiff Santiago be transferred ceaselessly in an attempt to constructively fire him, and to take away the duties which gave his position both importance and prestige, and then to take away his equipment, force him to punch in at the Ponce Airport to then travel to work, all in an attempt to make him so miserable that he would quit all with the  intention of having plaintiff and other PPD career employees replaced with NPP affiliates.

75.  By reason of the foregoing, all defendants have all subjected Plaintiff Santiago to the deprivation of his First Amendment rights and are liable in damages to Plaintiff under 42 U.S.C.  Section 1983.

76.    Defendants all contributed to the harassment and discrimination campaign against Plaintiff Santiago by refusing to assign Plaintiff Santiago the functions of his job, arbitrary transferring him, refusing to give him the equipment he needed to perform his job, treating him differently than employees not affiliated with the NPP, condoning harassment,  they gave to NPP affiliated managers, falsifying charges and dismissing Plaintiff.   Each Defendant used his respective position to discriminate against and harass Plaintiff Santiago, so color of the law, and to attempt to constructively fire Plaintiff, and eventually fire him because his political affiliation was different then their own and are negligent and/or acted with malice or total disregard for Plaintiff Santiago's civil, constitutional and contractual rights.

77.  By reason of the aforementioned acts of political discrimination, defendants have subjected Plaintiff Santiago to the deprivation of his First Amendment rights afforded by the United States Constitution and is liable in damages to Plaintiff Santiago under 42 U.S.C.  Section 1983.

78.  As a direct and proximate result of defendants violations of Plaintiff  Santiago's First  Amendment rights, plaintiff   Santiago has sustained severe injuries and prays judgment against defendants jointly and severely for lost benefits, he has a proprietary interest over his position and thus his salary and  benefits, pursuant to both the United States and Puerto Rico Constitutions, as well as to interests over the aforementioned

lost benefits, in an amount no less than sixty thousand Dollars ($60,000.00), an amount that increases every month.

79.    Given that the law was clearly established at the moment that all Defendants engaged in the deliberate, discriminatory and unlawful violation of Plaintiff Santiago's rights under the United States Constitution, defendants' conduct constitutes reckless disregard for plaintiff's constitutional rights for which Plaintiff Santiago is entitled to punitive damages in an amount no less than three hundred thousand Dollars ($300,000.00).

80.    Moreover, as a result of all the defendant's discriminatory actions, Plaintiff Santiago's life has been severally altered and affected, due to the fact that his principal source of income is lost and his reputation is damaged, and he can no longer work in a government position, as he was fired due to his political beliefs, Plaintiff Santiago has suffered and continues to suffer deep mental pain and emotional anguish which is estimated in a sum no less then $500,000.00, plus interest, attorneys; fees, costs and such other and further relief as justice may require.

81.    Finally due to the illegal, arbitrary, discriminatory actions and harassment, illegal firing by defendants towards Plaintiff Santiago, they must be ordered to desist from such behavior, reinstate Plaintiff, and allow him the same benefits received by the NPP affiliated employees who hold the same position as he does.

82.    All Defendants spouses who are and/or were legally married to defendants at the time of the facts, benefitted from all defendants' salaries and are thus liable to Plaintiff for the discriminatory acts of their spouses.

83.    All Defendants Conjugal Legal Partnerships composed of Defendants and their spouses presently and/or at the time of the facts benefitted from the Salaries of all defendants and are thus liable to Plaintiffs for the actions of defendants.

84.    John Does 1, 2, and 3 and Joan Does 1, 2, and 3 are all liable to Plaintiffs as they have, so color of authority conceded to them by their positions, contributed to the harassment, discrimination, illegal transfers and firing of Plaintiff Santiago because he is affiliated to a different political party than they are.

## VII.  SECOND CLAIM FOR RELIEF
### (Violation of Plaintiff's Fourteenth Amendment Due Process Rights)

85.   Plaintiffs reproduce and reaffirm as if alleged herein each and every one of the preceding allegations.

86.   Plaintiff Santiago held a property interest in his position in the Ports Authority, and could and cannot  be arbitrarily, discriminatorily transferred, demoted, or fired for reasons other than his job performance which was excellent, yet all defendants in violation of his due process rights under the Fourteenth  Amendment of the United States Constitution arbitrarily and discriminatorily transferred, demoted, and fired Plaintiff Santiago not based on his job performance but based on his political beliefs.

87.   The DTOP is not considered to be an Arm of the State for purposes of discrimination and had the duty to ensure that no employee would be discriminated against, and due to the other defendants' acts, DTOP failed to comply and is thus liable to Plaintiffs.

88.   All Defendants under color of law arbitrarily fired Plaintiff Santiago, after Defendant Figueroa realized a biased investigation filled with untrue and incorrect information as she could not stand him.

89. Although Plaintiff was qualified for the position of Itinerant Regional Manager of the Ponce Airport, for which he applied, he was denied that position which was given to a much less qualified NPP affiliated employee.   Furthermore, Plaintiff was used as an assistant at the LMM Airport when four (4) other airports had no Managers in Property.  Finally, the illegal arbitrary transfer was allegedly based on "necessity of service"; however, Plaintiff was assigned no functions.

90.   Defendants Riollano and Figueroa under color of law worked together to attempt to have employees file charges against Plaintiff Santiago in order to have him fired because he didn't belong to their political party. Whereas, Piza, Trinidad, and Rivera condoned that misconduct by ignoring Plaintiff's request that Figueroa be kept away from the investigation.

91.   Defendants' personnel actions alleged in the present complaint were made with blatant disregard to Plaintiff's Fourteenth Amendments Due Process Rights, as a career employee of the Authority of Ports of Puerto Rico.

92.   The conduct and acts of all defendants named in this complaint resulted in the illegal firing, transfers and demotion, harassment, and refusal to hire, and refusal to reimburse and concede benefits to Plaintiff

Santiago is due to his political affiliation is a violation of his due process rights under the Fourteenth Amendments of the Constitution of the United States.

93.   As a result of the willful violation of plaintiffs' Constitutional rights under the United States Constitution, Plaintiff  Santiago is entitled to complete restitution of  the position of Deputy Director of Airport Management, with the salary, duties, responsibilities, and benefits  of said positions including but not limited to salaries, raises, bonuses, and fringe benefits such as payment and reimbursement of diets and mileage he would have received if he had been conceded to that position within the Ports Authority.

94.   The salary and benefits alone is estimated in an **amount of no less than fifty five thousand Dollars ($55,000.00) for every month that passes by.**

95.   Plaintiff Santiago is also entitled to injunctive relief through placement in his employment position. And enjoining defendants from further discrimination against him because of his political beliefs and association now and in the future.

## VIII.  THIRD CLAIM FOR RELIEF
### (Punitive Damages)

96.   Plaintiffs reproduce and reaffirm as if alleged herein each and every one of the preceding allegations.

97.   The above described unlawful acts of all defendants were willful, wanton, malicious oppressive and/or with reckless disregard or delivered indifference to Plaintiff Santiago's constitutional rights, which Defendants knew were contrary to the law, for which Plaintiffs are entitled to punitive damages in the amount of no less than **ONE MILLION DOLLARS $1,000,000.00 .**

## IX. FOURTH CLAIM FOR RELIEF
### (Political Discrimination under Law 100 and Emotional Damages under Articles 1536, 1537, and  1540 (d) of the Civil Code of Puerto Rico **of the Civil Code of Puerto Rico)**

98.   Plaintiffs reproduce and reaffirm as if alleged herein each and every one of the preceding allegations.

99.  Pursuant to 28 U.S.C.  Section 1367.  The federal claims have sufficient substance to confer subject matter jurisdiction to this Court and the State Law claims arise out of the same nucleus of operative facts as the Federal Claims arise, such as in the present case.

100.   The discriminatory and arbitrary firing, transfers, harassment, denial of benefits, demotion, fabrication of charges, attempts at constructive discharge, biased examiner, harassment and/or non –hiring   of Plaintiff Santiago on the basis of his political beliefs by the part of all defendants constitute an open violation of the Constitutional Rights guaranteed to Plaintiff by the Constitution and the Laws of Puerto Rico.

101.   The Ports Authority is a public entity that operates as a business, and thus falls within the scope of applicability of Law 100.     Furthermore, the Ports Authority, in relation to discrimination cases, is not considered to be an arm of the State so it is liable to Plaintiffs for the conduct of its employees and because it is supposed to be a workplace free from discrimination.

102.   Pursuant to Puerto Rico's Law 100, 29 LPRA sec. 146, et. Seq. as amended, plaintiff Santiago is entitled to a sum equal to **twice the amount of the pecuniary, back pay, reinstatement to his previous position before his illegal dismissal and moral damages claimed in the present complaint for the amount of two hundred thousand Dollars ($200,000.00.00)**

103.   Plaintiff Santiago's wife Plaintiff Maribel Capestany is deeply in love and committed to her husband. When she sees his suffering as the result of the abusive and harassing acts of Defendants, she feels that her heart will break.   Their actions of harassment have caused and continue to cause her deep emotional damages, as she suffers for her husband.   She also suffered and continues to suffer emotionally for attempts to constructively fire her husband, and the actual firing and feels humiliated and angered by the Defendants' acts which have caused her loss of happiness, extreme worry and stress, financial loss, and emotional damages which she  has suffered, and will continue to suffer.

104.   Plaintiff Maribel Capestany is constantly worried and under extreme stress, as due to the acts of Defendants constantly transferring and harassing her husband, it is clear to her that their main goal is to cause him to lose his job and create financial instability to Plaintiff.

105.   Plaintiff Santiago's wife, Maribel Capestany is entitled to the sum of no less than **$50,000.00 for emotional damages** caused to her by all Co-defendant's illegal acts against her husband under **Article 1536** of the Civil Code of Puerto Rico.

106.  All Defendants spouses who are presently and/or were legally married to defendants at the time of the facts have benefitted from Defendants salaries and acts and are thus responsible to all Plaintiffs for the acts of Defendants.

107.  All spouses and Conjugal legal partnerships composed of all defendants and their spouses at the time of the facts and presently are responsible for the acts of all defendants as said spouses and conjugal partnerships benefited from the salaries and acts of all defendants.

### X. FIFTH CLAIM FOR RELIEF:
### (Attorneys Fees 42 U.S.C. 1988 and State Laws)

108.  Applicable to the present case is 42 U.S.C 1988, due to the fact that violations under 42 U.S.C. 1983 and 1985 have occurred.  It is requested that This Honorable Court impose upon DEFENDANTS a sum no less **than One Hundred Thousand Dollars ($100,000.00) for Attorneys fees under 42 U.S.C**. **1988.**

109.  Under State Laws DEFENDANTS are liable for the payment of Attorneys Fees and the Appearing Party requests that an additional Fifty Thousand Dollars be imposed upon DEFENDANTS in the present case.

### XI PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs very Respectfully pray to this Honorable Court to GRANT the present Lawsuit in its totality and Order:

A. Reinstatement of Plaintiff Santiago to the position Assistant Director of Airport Management

B. Back pay, double pay, double damages, bonuses, and benefits to Plaintiff.

C. Emotional damages to each Plaintiff in an amount not less than two hundred thousand dollars ($200,000.00)

D. Punitive Damages to each Plaintiff in the amount of One Million Dollars ($1,000,000.00).

E. Attorneys Fees, cost and prejudgment and post judgment interests.

F.  Defendants to desist from the harassment, violations of due process, discrimination, and denial of benefits to Plaintiff**.**

F.  Any other remedy that this Honorable Courts deems just and proper.

Respectfully submitted in Ponce to San Juan, Puerto Rico this December 25, 2023.

**JRAF LAW FIRM P.S.C.**
**P.O. BOX-7498**
**PONCE P.R.  00732**
**TEL. (787) 247-9056**
 **riveraroman@hotmail.com**

**S: JUAN P. RIVERA ROMAN**
**JUAN P. RIVERA ROMAN**
**USDC:210906**